Sponsler v. Max.

---

WINFIELD SPONSLER ET AL., APPELLEES, V. FRED M. MAX, APPELLANT.

FILED MAY 1, 1925.   No. 23098.

1.  Vendor and Purchaser: CANCELATION OF CONTRACT. "A vendee who demands the cancelation of a contract to purchase real estate for nonperformance by vendor must show compliance with its terms or tender of performance on his part." *Olson v. Woodhouse*, 112 Neb. 527.

2.  Evidence examined, and *held* sufficient to sustain the judgment.

APPEAL from the district court for Frontier county: CHARLES E. ELDRED, JUDGE. *Affirmed.*

*W. L. Minor*, for appellant.

*Butler & James, contra.*

Heard before MORRISSEY, C. J., DAY, GOOD, THOMPSON and EVANS, JJ.

Day, J.

This is an action by plaintiffs for a strict foreclosure of a contract for the sale of real estate, wherein the plaintiffs are vendors and the defendant, Fred M. Max, is vendee. The defendant filed a cross-petition in which he sought a cancelation of the contract and a return of $1,000, which he had paid upon the contract. The trial court found, upon an accounting between the parties, there was due on the contract from the defendant $3,900, and decreed that, unless the defendant paid said sum within 60 days, the defendant should be forever barred from any rights under the contract, and that the title to the lands be quieted in the plaintiffs as against the defendant. The court also found and decreed against the defendant on his cross-petition. From this decree the defendant has appealed.

The record shows that on March 10, 1920, the plaintiffs and defendant entered into a written contract by which the plaintiffs agreed to sell and the defendant agreed to buy a certain tract of land, specifically described, together with certain items of personal property, for $10,700. By the terms of the contract $1,000 was to be paid on April 1, 1920, $4,800 on March 1, 1921, at which time the vendors were to deliver a warranty deed to the defendant for the premises, subject to a mortgage of $4,900, which the vendee was to assume and pay. The contract also provided that the vendors were to furnish to the vendee, on or about February 1, 1921, an abstract of title showing a valid and marketable title to the lands in the vendors. Time was made the essence of the contract.

The defendant paid the $1,000 due April 1, 1920, but failed to make the payment of $4,800 which by the terms of the contract was due March 1, 1921.

While the contract is silent as to the place where the final settlement and delivery of the deed was to be made, the evidence satisfies us that the parties understood that the settlement was to be made at the Bank of Cambridge where the original papers were drawn and executed. Under the issues presented, we think the case must turn upon the question as to which one of the parties breached the contract.

The evidence is clear that defendant did not go to the bank on March 1, 1921, or at any other time, and offer to perform his part of the contract. He attempts to excuse his failure to pay the amount due on March 1, 1921, and to demand a deed for the premises, upon the ground that plaintiffs had failed to furnish him an abstract of title, as provided in the contract.

It will be noted that the contract provided that the plaintiffs should furnish an abstract of title on or about February 1, 1921, showing a valid and marketable title in the plaintiffs. The record shows that the Bank of Cambridge, acting for the plaintiffs, sent to the defendant in January, 1921, an abstract of the title. Through an error of the defendant this abstract was returned by the defendant's wife to the bank, without comment, instead of being sent to the attorney for defendant, as intended by the defendant. On February 12, 1921, defendant's attorney wrote the bank stating, in effect, that the abstract had been erroneously returned to it and requesting that the abstract be sent to him for examination. This was done. On February 24, 1921, the attorney returned the abstract to the bank suggesting some corrections to be made and refusing to accept the abstract as a compliance with the terms of the contract.

On February 26, 1921, the bank wrote a letter to defendant's attorney stating that the abstract would be in the bank on March 1, 1921, with all corrections made to put the title in a merchantable condition, and that vendors would be present to make settlement on March 1, 1921. The testimony shows that the vendors were present at the bank on March 1, 1921, with a deed to the premises properly executed, and were then ready, able and willing to carry out the contract, but that defendant failed to appear. On March 7, 1921, the bank, for the plaintiffs, wrote a letter to defendant stating in effect that, if the defendant would pay $2,400 in cash on the contract, the plaintiffs would extend the time of payment of $2,400 for one year without interest. The defendant made no response to this letter. His testimony with reference to this letter is that

he never received it. It is quite evident that the defendant was not relying on a strict performance of the contract as to time, because as late as December 9, 1921, he wrote a letter to the plaintiffs concerning this transaction, in which he says: "Well, I went to see my man twice last week and he didn't tell me what he was going to do, but I will be honest with you, if he don't get the money I can't get it for you."

Considering the entire testimony, we are quite convinced that the defendant was the one who breached the contract.

Defendant claims that the abstract did not show a merchantable title. The objections to the abstract are not very well founded. The testimony is not clear as to what objections were made upon the trial, but the evidence shows the objections were met, and that on March 1 the plaintiffs were in a position to complete the contract in accordance with its terms.

The defendant also urges that the plaintiffs sold the land and thus put it out of their power to carry out the contract. In this respect the testimony shows that the plaintiffs had entered into a contract of sale for the land and had delivered a deed in escrow to the bank, but it is shown that the plaintiffs were still in a position to perform the contract with defendant. The vendee in the second sale testified that he was willing to surrender his rights under his contract.

The rule is established in this state that—"A vendee who demands the cancelation of a contract to purchase real estate for nonperformance by vendor must show compliance with its terms or tender of performance on his part." *Olson v. Woodhouse*, 112 Neb. 527.

From a review of the entire record, we are quite convinced that the judgment of the district court is right, and it is therefore

AFFIRMED.